Argued April 14, reversed May 18, 1926.

## ELLA SOULES *v.* MAUDE SILVER et al.

(245 Pac. 1069.)

**Life Estates—Testator's Widow, Who Took Possible Life Estate in Real Property, Held not Entitled to have It Sold Without Consent of Remaindermen (§§ 10070, 10071, 10092, 10119, Or. L.).**

1. Testator's widow, who took possible life estate in his real property, *held* not entitled to have it sold without consent of remaindermen merely because events subsequent to testator's death made income inadequate for her support, where will did not indicate intention to subject remainders to charge for her support, in view of Sections 10070, 10071, 10092, 10119, Or. L.

**Remainders.**

2. Vested remainder in land confers immediate fixed right of future enjoyment of fee-simple title.

**Wills.**

3. Whether testator's provision for support of widow was reasonable or unreasonable is matter over which Supreme Court has no control.

**Wills—Testator's Oral Declaration Held Inadmissible to Show Intention as to Disposition of Property.**

4. Testator's oral declarations *held* inadmissible to show intention as to disposition of property, where there was no uncertainty in will as to devisees or thing devised, since such intention is to be gathered only from language of will.

**Wills.**

5. Wills are required to be in writing.

---

2. See 23 R. C. L. 483.
5. See 28 R. C. L. 110.

**Wills.**

6. Parol evidence cannot be adduced either to contradict, add to or explain contents of will.

---

Estates, 21 **C. J.,** p. 962, n. 76 New.

Wills, 40 **Cyc.,** p. 1057, n. 95, 96, p. 1388, n. 90, p. 1390, n. 95, 97, p. 1426, n. 92, p. 1433, n. 28, p. 1434, n. 29, p. 1438, n. 50, p. 1440, n. 67, p. 1443, n. 81, p. 1677, n. 76, p. 1678, n. 82, p. 1749, n. 58, p. 1963, n. 22, p. 1982, n. 84, p. 2040, n. 88.

From Marion: GEORGE G. BINGHAM, Judge.

Department 1.

REVERSED.

For appellant there was a brief over the names of *Mr. Fred W. Bronn, Mr. W. W. Graves* and *Mr. Walter S. Asher,* with an oral argument by *Mr. Asher.*

For respondent there was a brief and oral argument by *Mr. Walter C. Winslow.*

RAND, J.—On August 19, 1919, plaintiff's deceased husband died testate, leaving real property which consisted of a house and two lots and a small tract of land in the City of Woodburn, and also ninety acres of farm land near Woodburn. He left surviving him no children the issue of his marriage with plaintiff, but did leave surviving nine children by a former marriage. By his will, he devised to plaintiff a life estate in one of said lots, with remainder over to his nine children, to whom he gave and devised all of his other property. On July 10, 1919, he made a codicil, by the terms of which he devised to plaintiff a life estate in all of said real property, remainder over to said children. With

---

6. See 28 **R. C. L.** 268.

this exception, the codicil made no change in the disposition made by the will of the property of the testator. The life estate thus devised was made conditional by the codicil upon plaintiff's not re-marrying; the payment by her of all taxes levied against the real property after the expiration of three years from his death; the commission of no waste thereon, and the keeping of it in as good condition as it would be when it should come into her possession. These were conditions subsequent, and upon breach of either or any of them the codicil provided that the life estate and plaintiff's interest in the land should terminate and be at an end.

Plaintiff instituted this suit for the purpose of having all of said real property and the whole estate therein, that is, the life estate and the remainder, sold and converted into money, and the proceeds thereof invested in marketable securities, the income therefrom to be paid to plaintiff for her maintenance and support during the remainder of her natural life, and upon her death the principal to be divided among said children. She bases her right to this relief, upon the allegations in her complaint, that because of age and infirmity, she is unable to work and support herself, and that it was the intention of the testator to provide a sufficient income for her maintenance and support during her natural life, and that the income from the property is not more than sufficient to pay the taxes thereon, and is wholly insufficient to provide for her maintenance and support, and that she has no other means of support.

Plaintiff contends that this intention upon the part of the testator to so provide for plaintiff is evident from the language used in the first, second and

fourth clauses of his codicil, which read as follows:

"First: It is my wish and will and I give and devise to my wife, Ella Soules for and during her natural life the use, occupation and possession of all the real property of which I may die seized and possessed. Provided, that should she marry again after my death, then such tenure to terminate and cease. Provided, further, that the taxes upon the real property of which I may die seized and possessed shall be paid for three years from the personal property of which I may die seized and possessed, and after that, all such taxes shall be kept paid by my said wife, and should she fail, neglect, or refuse to keep all such taxes and assessments paid before they become delinquent, which may be lawfully levied or imposed upon said real property, then such tenure to terminate and cease. Also, she shall keep all such real property in as good state and condition as when she shall come into possession of the same hereunder, and in case she shall fail to do so, or shall commit waste or allow waste to be committed by another, then in that case, such tenure shall terminate and cease.

"Second: I direct that out of my personal property the street assessments against my city property located on Young Street in the City of Woodburn, be paid and discharged as soon after my decease as practicable.

"Fourth: The costs and expenses of setting out loganberries on my farm now being set out, be paid from my personal property, and not to be a part of the upkeep of the farm to be borne separately by my wife."

In reading these clauses in connection with the other parts of the will and codicil, it is obvious that the testator intended to vest in plaintiff a life estate in his real property defeasible upon her failure to comply with the conditions imposed, and no other

or greater estate or interest than that in the property, and upon compliance by her with the conditions named, she was to have the full use, possession and enjoyment of the property as long as she lived. It is equally obvious from the terms of the will that the testator intended that upon plaintiff's death, or the sooner determination of the life estate, for failure to comply with the conditions annexed to the devise, this property should descend to and become the absolute property of his children.

1. The Code provides that, "Every person of twenty-one years of age and upwards, of sound mind may by last will, devise all his estate, real and personal, saving to the widow her dower" (Section 10092, Or. L.); and gives to the widow the right to elect whether to take under the will or to be endowed with the lands of her husband (Section 10070, Or. L.); and provides that she shall be deemed to have elected to take the devise unless within one year after the death of her husband she shall commence proceedings for the assignment or recovery of her dower (Section 10071, Or. L.). Section 10119, Or. L., provides that "If any person by last will devise any real estate to any person for the term of such person's life, and after his death, to his children or heirs, or right heirs in fee, such devise shall vest an estate for life only in such devisee, and remainder in fee simple in such children."

Under these provisions of the Code, and under the conditions imposed by the will, the will created in plaintiff nothing more than a mere possible estate for life in the lands of the testator, but in the children of the testator it created vested remainders in the land, upon the determination of her estate. These estates became vested in the children upon his death, and are purely legal in their nature. No

trust could or did result by reason of anything contained in the will, and there are no allegations in the complaint, nor was any proof offered upon the trial of any facts from which a trust relation between the parties to this controversy could or did arise. Much has been said in the briefs, and many authorities are cited concerning the powers of a court of equity to direct the sale of trust property in certain cases. Whether courts of equity possess such power, and under what circumstances the power, if it exists will be exercised, we will not stop to consider, since the facts of this case do not bring it within the application of any of the principles announced in any of said cases.

It was alleged in the complaint, and the evidence shows, that for a short period preceding the death of testator, he was engaged in planting a part of the land to loganberry vines; that the raising of loganberries was then a profitable business, and that the raising of loganberries is not profitable at the present time. It also appears that prior to the time of the death of testator, farm products could be disposed of at a high price which no longer prevails, and that the business of farming this particular land is at this time unprofitable. The evidence also shows that the loganberry vines which were set out by the testator have without plaintiff's knowledge or consent since been dug up and removed by a tenant of the testator, who was holding under an unexpired term, and that this has resulted in depriving her of a considerable part of the income which the testator intended for her to have, and which otherwise she might have received from the place. These facts, it is contended, are evidence of an intention upon the part of the testator to provide an income for plaintiff much greater than that

she is now receiving, and that because of this intention, plaintiff is entitled to the relief which she is now seeking to recover.

2. It is evident from the reading of the fourth clause of the codicil, when read in the light of the attending facts, that in directing the setting out of these vines, and providing that the expense thereof should be paid out of his personal estate, the testator, contingent upon his death, was attempting to provide for what he believed would be a source of income for plaintiff. The fact, however, that this particular source of income has since failed cannot in any way affect the rights and interests of his other devisees. As to them, it is clear that he intended that they should have an estate in fee in the land upon the termination of plaintiff's life estate. The relief sought by plaintiff would result in the destruction of their remainders, and divest them of any interest in the land, which is clearly contrary to the expressed intention of the testator. Under the plain provisions of this will, testator's children, upon his death, acquired vested remainders in the land. This conferred upon them an immediate, fixed right of future enjoyment of the land upon the termination of plaintiff's estate, which at common law would ripen into an estate in possession, and under our statute an estate in fee-simple title. The intention of the testator to vest in his children an estate in remainder cannot be modified or controlled by events which have taken place since the making of the will. The will contains no language or expression indicating an intention upon the part of the testator to make these remainders in any way subject to the burden of providing an income for plaintiff. The law will not fulfill an intention which is

not expressed in the will. It is the intention of the
testator at the time he makes his will, which alone
the law will carry into effect, and events happening
after the making of the will, are unavailable to in-
troduce an intention into it which is not expressed.
A person may by will, anticipate and provide for the
happening of subsequent events, but the intention to
do so must be expressed in the will, and cannot be
proved by any evidence extrinsic to the will itself.
Hence, while it is possible from the language of the
fourth clause that the testator may have intended to
provide a source of income for plaintiff, the will af-
fords no evidence of any intention upon his part to
accomplish that result by depriving the children of
their vested remainders.

3. There is no language in the will indicating an
intention to subject the remainders of the children
to a charge for the support of plaintiff. On the con-
trary, the provision making it possible before plain-
tiff's death, for the life estate to determine on
account of plaintiff's failure to comply with the condi-
tions imposed indicates an intention to protect the
remainders of the children against any possible in-
jury arising from plaintiff's failure to perform the
conditions, rather than an intention to impose a
charge upon their interests for her support. Whether
the provision made for the support of plaintiff was
reasonable or unreasonable is a matter over which
this court has no control. It is alleged in the com-
plaint that the reasonable value of the real property
is approximately "fifteen thousand dollars"; that
the ninety-acre tract is "first-class farm land," and
at the time the will was made it was producing a
"substantial income." From this it would seem that
the estate devised to plaintiff was of considerable
value, but whether so or not, the courts of this state

have no jurisdiction to order the whole estate sold without the consent of the other devisees, on the sole ground that plaintiff's income therefrom is insufficient for her support.

4–6. There was evidence offered and received tending to show oral declarations of the testator to the effect that he intended by this will to provide an income ample for the support of plaintiff, and other declarations to the effect that she had not helped him to acquire this property in any way, and that he did not intend for her to have anything more than the net income of his real property. These declarations were wholly incompetent and inadmissible. The intention of a testator is to be gathered from the language of the will. In construing wills, the question is not what the testator meant, but what the words used mean. Wills are required to be in writing, and parol evidence cannot be adduced either to contradict, add to or explain the contents of a will. Oral declarations of the testator's intention cannot be resorted to in aid of the exposition of a will, except where a person or thing is described in terms equally applicable to two or more. Here there was no uncertainty of the persons of the devisees, nor of the thing devised. This testimony, therefore, was incompetent and inadmissible. See 1 Greenleaf on Evidence (16 ed.), § 289 et seq., 1 Jarman on Wills (6 Am. ed.), star p. 379 et seq.; Thayer's Preliminary Treatise, 482, 483.

From this it follows that the decree appealed from must be reversed and the suit dismissed, but without cost to either party in this or the Circuit Court.

Reversed and Suit Dismissed.

McBride, C. J., and Burnett and Coshow, JJ., concur.