Argued February 1; affirmed February 14, 1933

# In re KULKA'S ESTATE
# HANSEN et al. v. OREGON HUMANE SOCIETY

(18 P. (2d) 1036)

*Henry S. Westbrook,* of Portland, for appellants.

*Homer D. Angell,* of Portland (Angell, Fisher & Sabin, of Portland, on the brief), for respondent.

BEAN, J. The appellant seeks to construe the third paragraph of the testator's will so as to render it ineffective on the following grounds: (1) Because it is indefinite and uncertain and therefore void; (2) because the legatee is not definitely designated; (3) because of the alleged release by respondent of the $2,000 legacy.

On the contrary, the respondent contends, first, that, this paragraph of the will is clear, definite and certain and should be complied with, as held by the lower court; second, that the alleged release is void and of no force and effect for the following reasons: (a) because it was not authorized by the respondent corporation; (b) because it was given without consideration; (c) because the Oregon Humane Society, a legatee, could not release the legacy if it so desired, as it constitutes a charitable trust; (d) because the release is absolutely void and ineffective by reason of the fact that the executor is prohibited by law from overreaching the respondent, a legatee, and securing a release from it, which would result to his own profit and advantage, as it is admitted that if the release is upheld the legacy, which otherwise would go to the Humane Society for a charitable trust, will go to the executor personally and certain other of the legatees.

In regard to the first reason mentioned, that the officers of the society were not authorized by the board of directors to execute the release, the powers of the Oregon Humane Society are vested by its articles of incorporation in the board of trustees, consisting of twelve members, and the articles provide that "All powers vested in this corporation and exercised by the board of trustees may be so exercised by a majority vote of the members of the board present at any meeting". Article IV provides that five members of the board shall constitute a quorum for the transaction of the business at any meeting of the board. The memorandum made in the minutes plainly indicated that the business pertaining to the matter should be taken up at a later meeting of the board. Second, it was given without consideration, but it was purported to be given in consideration of the acceptance by the respondent of the Washington county land, which was specifically devised to respondent and which it already held in fee, and therefore it could not form the basis of a consideration. Third, the legacy of $2,000 to the Oregon Humane Society constituted a trust and the society had no power to release it to the other legatees and thus avoid the trust, if it so desired, as it would be against public policy, and in such a case a court of equity, if it became necessary, would substitute another trustee who was willing to comply with the terms of the trust. Fourth, the release was absolutely void and ineffective by reason of the fact that appellant, as executor, occupying a fiduciary relationship, was prohibited by law from negotiating with respondent, one of the beneficiaries under the will, and taking from it a release of its legacy which would result to the advantage of the executor by making it possible to pay his legacy and those of his co-legatees, except the Humane Society.

The appellant moved to strike out a portion of the petition of respondent, and assigns the refusal as error. As we view the matter, it raises the same question involved in other phases of the case.

It is contended by appellant that the decree appealed from avoiding the release is void for want of jurisdiction; that the probate court had no equity jurisdiction. The executor in his answer to the petition sets forth some of the provisions of the will and, among other things, alleges that the Oregon Humane Society of Portland, Oregon, a corporation, on February 3, 1931, by one Lillie D. Thomas, the duly elected and acting vice-president, and one Mrs. F. W. Swanton, the duly appointed, qualified and acting general manager of said corporation, acting under and by virtue of the board of directors of the corporation, executed a waiver and release of the proceeds of the timber, $2,000, in order that the timber might be sold, and delivered to the executor a release of any and all claims to said timber and to any and all money derived from the sale of said timber, and that thereafter the executor, relying upon the waiver and release, filed a petition in the above entitled estate to sell the timber and obtained the order authorizing said sale and in pursuance thereof sold the timber for $2,000.

■ From the record, we find that the release in question was not authorized by the Oregon Humane Society, a corporation, but was repudiated by the corporation at the first meeting of its board of directors when it was called to its attention.

■ There is considerable argument in regard to the construction of article III of the will. The Oregon Humane Society is plainly described in this clause of the will, and it is shown that there was no other Humane Society in Portland other than the Oregon

Humane Society, a corporation, and it was undoubtedly this society that the testator intended to devise a quarter section of land, reserving the timber therefrom and if the executor should sell the timber then he should pay out of the proceeds of the sale thereof the sum of $2,000. There is but little controversy in regard to this name.

There appears to have been no trouble in regard to identifying the quarter section of land in Washington county owned by the testator.

The main provisions of this clause of the will devising to the Humane Society a quarter section of land and

"reserving therefrom all timber, and that if my executor hereinafter named shall sell said timber, then and in that event I hereby direct my executor hereinafter named to pay to said Humane Society out of the proceeds from the sale of said timber, the sum of two thousand dollars ($2,000), which bequeath I desire to be used solely for the benefit of animals".

as we view it, needs no legal construction. It is only necessary to read it and enforce it. We believe the provisions are plain and that the will of the testator should be carried out. We do not deem the main provisions of this clause to be ambiguous and find no basis for the contention that the Humane Society was entitled to a quarter section of land or $2,000 of the proceeds of the timber, as made by appellant, but that in the event the timber should be sold by the executor for $2,000 or more the society was entitled under this provision of the will to the quarter section of land and $2,000 from the proceeds of the timber. In the event the timber had been sold for $5,000, then the remainder would doubtless have constituted a part of the estate.

■ It was incumbent upon appellant to establish that the Humane Society, a corporation, authorized the

execution of the release, which defendant failed to do. *Vawter v. Rogue River Valley Can. Co.*, 124 Or. 94 (257 P. 23, 262 P. 851), lays down the well-known rule that a corporation can act only through its board of directors at regularly called meetings.

■ It was the duty of the probate court to determine whether there had been any valid release by the Humane Society in order to properly direct the executor. It did not require the interposition of a court of equity to determine whether the release was valid or invalid, and the probate court, we think, had jurisdiction to pass upon the question.

■■ One of the reasons assigned by the respondent for the invalidity of the release in question is due to the fact that there was no consideration given therefor. In 53 C. J. 1200, § 11, it is said:

"A release, being a contract, must, in order to be of any effect, either be under the seal of the releasor, or be shown to be supported by a sufficient, valid or valuable consideration; * * *" See also p. 1207, § 22, ibid.

In *Wells v. Wood,* 125 Or. 38 (263 P. 54), the executor of the estate sought to defend his course of action by attempting to purchase from the beneficiaries of the estate their interest in the estate for a consideration of $6,000. The devisees and legatees were entitled to $10,000 and the executor paid $6,000 for the release. That case was much like the one in hand. In the Wells case the court, in holding the release void for lack of consideration, at page 52, records the following language:

"We think it is [void] on another ground also. There is no consideration for the sale and transfer. Defendant should have paid to plaintiffs $10,000 when she paid them only $6,000. There was then no consideration for the assignment and transfer of the shares

bequeathed to John Wood, Jr. We think that plaintiffs are entitled to two-thirds of the shares so bequeathed to John Wood, Jr., and all dividends thereon after his death, and to $4,000 additional on account of the legacies bequeathed to them''.

■ It is well established that the trustee cannot release a trust; neither can a charity be altered as to its purpose and management by an agreement between the donor's heirs and the donees or the trustee. 11 C. J. 371, § 99, and cases cited in the notes. *Attorney General v. City of Lowell*, 246 Mass. 312 (141 N. E. 45).

■ ■ Provisions for the protection of animals or birds is a valid charitable trust. 11 C. J. 326, § 38; Annotations, 66 A. L. R. 465. Equity takes a most favorable attitude toward a charitable trust. *Vestal v. Pickering*, 125 Or. 553 (267 P. 821); *In re Wilson's Estate*, 111 Wash. 491 (191 P. 615); *Bank of Commerce & T. Co. v. Banks*, 161 Tenn. 11 (28 S. W. (2d) 340, 69 A. L. R. 1353); *Thorp v. Lund*, 227 Mass. 474 (116 N. E. 946, Ann. Cas. 1918B, 1204).

■ Every presumption consistent with the language of the will is indulged in to sustain gifts to charity. *Summers v. Chicago Title & Trust Co.*, 335 Ill. 564 (167 N. E. 777).

■ The bequest in question, being a charitable trust for a definite purpose, namely, to be used solely for the benefit of animals, cannot be released by anyone, especially pursuant to an agreement between the executor, charged with its protection, and a trustee, the Humane Society, charged with the expenditure of the funds for the purpose of the trust. Any agreement between the executor and trustee, attempting to accomplish this purpose, is absolutely void. *Wemme v. First Church of Christ*, 110 Or. 179, 192 (219 P. 618, 223 P. 250).

■ It appears from an examination of the record that Mrs. Thomas, acting executive officer of the corporation, who signed the release, had no appreciation of the construction the executor now places upon it. She was laboring under the impression, acquired from Mr. Hansen's construction, that the Humane Society was not entitled to both the land and the $2,000, but was entitled to one or the other and that it was necessary for the instrument to be signed to show an election.

■ In 23 R. C. L. 386, § 17, it is said: "To be valid and binding a release must be executed with full knowledge on the part of the releasor of what he is signing and with an intention to discharge from liability". This was quoted with approval in *Wood v. Young,* 127 Or. 235, 241 (271 P. 734). In *Iltz v. Krieger,* 104 Or. 59, 72 (202 P. 409, 206 P. 550), this court said: "Before the waiver of a legal right results, 'there must be both knowledge of the existence of the right and an intention to relinquish it'. Fairview R. R. Co. v. Spillman, 23 Or. 587, 592 (32 P. 688); Parker v. Hood River, 81 Or. 707-710 (160 P. 1158); 27 R. C. L., pp. 908-910".

■ Appellant contends that the Humane Society is effectively estopped to assert any rights to the timber or the proceeds thereof or that the release is void, for the reason that petitioner knew the contents of the release before its execution and that the devisees named in the Kulka will would not receive their full bequests if the release had not been executed and delivered and the timber sold; also they knew under the construction of the will that the petitioner would have no claim to the timber or the proceeds thereof unless it was sold by the executor during the probation of the estate, and knew that the executor and the devisees intended to place the $2,000 received for the time in the assets of the estate without petitioner asserting

any claim thereto. We do not think that the doctrine of estoppel applies. The elements of estoppel by representation as given in 21 C. J. 1119, were approved in *Bramwell v. Rowland,* 123 Or. 33, at page 48 (261 P. 57), quoting from 21 C. J. 1119, as follows:

"In order to constitute this kind of estoppel there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied on or acted upon it to his prejudice. To constitute an 'estoppel in pais' there must concur an admission, statement, or act inconsistent with the claim afterward asserted, action by the other party thereon and injury to such other party. There can be no estoppel if either of these elements are wanting. They are each of equal importance".

The appellant, from a legal standpoint, does not come into court with clean hands and therefore is not entitled to assistance from a court of equity, on account of his attempt to acquire the interest of the beneficiary, the Humane Society, for less than its face value. It is admitted that the executor would profit personally by the consummation of his attempted agreement with the Humane Society, a beneficiary under the will. *Wemme v. Hurlburt,* 133 Or. 460, 466 (289 P. 372); *Wells v. Wood,* supra; *Bramwell v. Rowland,* supra; 2 Pomeroy's Equity Jurisprudence (3d Ed.), § 805.

Furthermore, in order to invoke an estoppel as a defense, the party pleading it must have changed his position to his injury in reliance upon his representations, as stated by the court in *Bramwell v. Rowland,* supra. The record does not show that the executor changed his position in any respect to his injury. He

sold the timber, but his petition for the order therefor shows that it was an opportune time and was for the best interests of the estate that it should be sold then. The element of estoppel that the statement must have been made with knowledge, actual or constructive, of the facts and that the party to whom it was made must have been without the knowledge or means of knowledge of the real facts, is a sound requirement. The officers of the Humane Society, in executing the release, were acting without knowledge of the true situation. They were relying upon the advice of the executor, upon whom they were entitled in law to rely, as he represented them, and were relying upon the fact that he was a lawyer and was presumed to have full knowledge of the entire matter. They had no knowledge that the release was for the purpose of giving up the right of the society to the $2,000 legacy, but the executor had full and complete knowledge.

██ The rule as given in 21 C. J. 1125, § 128, is as follows: "No estoppel arises where the representation or conduct of the party sought to be estopped is due to ignorance founded upon an innocent mistake". See also § 131, page 1131, where we find the following: "No estoppel arises where the party setting it up is under as great obligation to inform the person sought to be estopped of the real facts as the latter is to inform himself".

██ The executor knew these officers could not execute a valid release unless authorized to do so by the corporation acting through its board of directors. He had knowledge that a quorum of the board was not present at the time the release was signed and no official action could be taken. The minutes themselves show "this matter to be taken up at a later meeting of the board". On March 3, the time the appellant claims that the

action of the officers was ratified by the directors, there is no mention of the matter of the release whatever. The record does not show that the minutes of the previous meeting of February 3, 1931, were even read. The same is true of the minutes of the next meeting of April 7, 1931. We can not find that the action of the officers was in any way ratified by the board of directors. On the other hand, when the matter was first taken up on the 5th of May it recites that action as to the Kulka bequest was deferred for the reason that there was no quorum present at the meeting of the board of directors on February 3, 1931, and they resolved to cancel the release for the reason that it was not authorized by the board and to demand the $2,000 legacy.

█ A person dealing with a manager of a corporation must take notice of the limitations imposed upon his authority by the act of incorporation. *Scovill v. Thayer,* 105 U. S. 143, 151 (26 L. Ed. 968).

█ The intention of the testator can only be determined from the will itself. Statements as to the testator's intentions or extrinsic evidence as to what he intended or testimony that he had a different intention than that expressed in the will are wholly inadmissible. *Re Estate of Hodgkins,* 110 Or. 381 (221 P. 169, 223 P. 738); *Closset v. Burtchaell,* 112 Or. 585 (230 P. 554); *Stubbs v. Abel,* 114 Or. 610 (233 P. 852, 236 P. 505); *Soules v. Silver,* 118 Or. 96 (245 P. 1069).

The probate court had jurisdiction to make the order involved; the findings of that court are correct. The order entered directing appellant, as executor, to pay the Oregon Humane Society the legacy of $2,000 bequeathed to it from the sale of the timber, pursuant to the will, is affirmed.

RAND, C. J., CAMPBELL and BAILEY, JJ., concur.