Argued February 6; affirmed February 21, 1951

In the Matter of the Estate of Herbert C. Howe,
DECEASED

HEIMBIGNER et al. *v.* THE U. S. NATIONAL
BANK OF PORTLAND, Administrator

227 P. (2d) 827

*B. G. Skulason,* of Portland, argued the cause for appellants. With him on the brief was C. W. Powers, of Portland.

*Edgar Freed* argued the cause for respondent Josephine A. Howe. On the brief were Freed & Failing, Ralph W. Golby and Fred W. Bronn, all of Portland. On the brief for respondent The United States National Bank of Portland (Oregon) were Maguire, Shields, Morrison & Bailey, and James G. Smith, of Portland.

Before BRAND, Chief Justice, and HAY, LUSK, LATOURETTE and WARNER, Justices.

HAY, J.

Herbert C. Howe died February 20, 1948. He left a will by which he established a trust fund of $9,000 from which his trustee was directed to pay to testator's wife, Josephine A. Howe, as long as she should live, the sum of $100 per month. The will contained certain specific bequests, aggregating $3,700, including one of $1,000 to testator's wife. Testator's son, I. W. Howe, also known as Irving W. Howe, was made residuary legatee.

As far as pertinent herein, that part of the will which established the trust reads as follows:

"Second: * * * I direct that my executor pay to the United States National Bank of Portland

(Oregon), a national banking corporation, as trustee, the sum of $9,000 to be held by it in trust for the following uses and purposes:

"(a) * * *

"(b) To pay therefrom the sum of $100 per month to said Josephine A. Howe so long as she shall live;

"(c) * * *"

On December 29, 1947, the testator made a codicil to his will, which, omitting the formal parts, runs thus:

"I

"Being aware of the great increase in the cost of living, and appreciative of the care and companionship of my beloved wife, Josephine A. Howe, I hereby modify sub-paragraph '(b)' of Paragraph 'Second' of my said Will, by causing the same to read: 'To pay the sum of $250.00 per month to said Josephine A. Howe so long as she shall live,' and further, it is my wish, and I hereby direct that my estate shall be charged with the payment of said sum of $250.00 per month during the years she shall survive my death.

"II

"That in all other respects my said Will shall remain unmodified."

Said United States National Bank was appointed administrator c. t. a. of testator's estate, and, having completed its administration thereof, it filed its final account. In such account it alleged, among other matters, the following:

"It is the construction of your administrator c. t. a. that the language of the codicil to decedent's Will was not intended by the decedent to alter the provisions of said Paragraph Second insofar as the trust fund provided for by said paragraph or the

amount thereof is concerned, nor was it intended to postpone the administration and distribution of decedent's estate until the death of said Josephine A. Howe. Your administrator believes and therefore alleges that the sum of $9000.00 should be paid into said trust fund as required by the terms of Paragraph Second of decedent's Will and the remainder of the estate distributed according to the other terms and provisions of said Will.''

An order of distribution was prayed for accordingly. The widow filed objections to the final account, contending that testator had made the payments of $250 a month which he had provided for her a charge upon his entire estate rather than upon the $9,000 trust fund alone. Issue was joined by the administrator and the other interested parties upon such objections, and, after a hearing, the probate court made an order sustaining the objections, interpreting the will in accordance with the construction for which the widow contended, and directing distribution of the estate as follows: (a) The sum of $9,000 to said bank, as trustee, to be administered on behalf of testator's widow in accordance with testator's will and codicil, and (b), the remaining assets of decedent's estate to said bank, to be held as a second trust fund, with directions that if and when the $9,000 trust fund should become exhausted, the monthly payments to testator's widow of $250 per month should thereafter be disbursed from the second trust fund, any unexpended balance remaining in either or both of such trust funds at the death of said widow to be distributed in payment of the specific legacies, pro rata, and the residue distributed to Irving W. Howe, the residuary legatee. The legatees of the specific legacies, and the residuary legatee, have appealed from such order.

The gist of appellants' contentions is that, by the codicil, the testator intended only to increase the widow's monthly allowance from $100 to $250, and to make no other changes in his will. Counsel point out that the effect of the probate court's construction of the order is to include the whole estate, amounting to over $18,000, in the trust fund, thereby, in the event that the widow should live long enough to exhaust the assets of the trusts, nullifying the specific and residuary legacies.

██ The cardinal principle to be applied in construing a will is to ascertain, from the entire instrument, the expressed intention of the testator. § 18-402, O.C.L.A., as amended by ch. 20, § 1, Oregon Laws 1945; *Fields v. Fields,* 139 Or. 41, 45, 3 P. 2d 771, 7 P. 2d 975; *Gomoll v. Temple,* 145 Or. 299, 301, 27 P. 2d 1018; *Imbrie v. Hartrampf,* 100 Or. 589, 594, 198 P. 521; *Closset v. Burtchaell,* 112 Or. 585, 601, 230 P. 554. It is contended that the language of the will and codicil herein is ambiguous, and that parol evidence was properly admitted to aid the court in construing such language. We think that there is no ambiguity in the language.

█ The general rule is that the intention of the testator may be gathered only from the will ifself, and evidence of a different intention than is to be gathered from the language which the testator used in the will is not admissible. This court, in a long line of decisions, has followed that rule. *Hartman v. Pendleton,* 96 Or. 503, 507, 186 P. 572, 190 P. 339; *In re Johnson's Estate,* 100 Or. 142, 157, 196 P. 385, 1115; *Gildersleeve v. Lee,* 100 Or. 578, 585, 198 P. 246; *Soules v. Silver,* 118 Or. 96, 104, 245 P. 1069; *Holohan v. McCarthy,* 130 Or. 577, 584, 281 P. 178; *Hansen v. Oregon Humane Society,*

142 Or. 104, 118, 18 P. 2d 1036; *In re Preston's Estate,* 157 Or. 631, 649, 73 P. 2d 369; *Miller v. Smith,* 179 Or. 214, 219, 170 P. 2d 583; *In re Holland's Estate,* 180 Or. 1, 20, 175 P. 2d 156.

The plain meaning of the language used by the testator herein is that he intended the increased monthly allowance to his widow to be a charge upon his whole estate.

" * * * The phrase, 'I charge the estate,' whether construed by strict rules of law or according to common understanding, is expressive of an intent to create a priority. It can have no other meaning.

"Taking the will as a whole, it appears that the testatrix thought that the estate would be sufficient to pay all legacies in full; but, if it was not sufficient, she intended that this annuitant should not lose any part of the sum that was to be paid to her each year. * * * There is no evidence to justify a conclusion that the testatrix did not mean what she said, or that the various parts of the will are necessarily conflicting. In accordance with the expressed intention of the testatrix, the annuity is a charge upon all the estate * * * , and takes precedence over all other bequests." *Young v. Benton,* 70 N. H. 268, 46 A. 51.

█ The meaning being clear, and there being no ambiguity in the language, there is no room for construction, and this court will not seek to read into the will and codicil an intent different from that expressed therein. *Stubbs v. Abel,* 114 Or. 610, 622, 233 P. 852; *Fields v. Fields,* supra, at 52; *Schramm v. United States National Bank of Portland,* 151 Or. 693, 701, 52 P. 2d 181.

The order appealed from is affirmed, but without costs.